UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
VERONICA BALAGUER,                  )
                                    )
                 Plaintiff,         )
                                    )      CIVIL ACTION
        v.                          )      NO. 11-10611-WGY
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner, Social Security       )
Administration,                     )
                                    )
                 Defendant.         )
_____ )


MEMORANDUM OF DECISION

YOUNG, D.J.                                    July 31, 2012


I.    INTRODUCTION

The plaintiff, Veronica Balaguer ("Balaguer") brings this action pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), and 42 U.S.C. § 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner").  Balaguer challenges the decision of the Administrative Law Judge (the "hearing officer") denying her Supplemental Security Income ("SSI") benefits and Social Security Disability Insurance ("SSDI") benefits.  She argues that the hearing officer's decision was not based on substantial evidence, and that the hearing officer failed properly to apply the Avery factors in assessing Balaguer's medically determinable

1

impairments and her residual functional capacity.  Mem. Law Supp. Pl.'s Mot. Reverse Remand Decision Comm'r Social Security ("Pl.'s Mem."), ECF No. 15.  Balaguer requests this Court reverse the decision of the Commissioner or, in the alternative, remand the case to the Commissioner.  Compl., ECF No. 1.  The Commissioner filed a motion requesting for an order affirming his decision. Def.'s Mot. Affirm Comm'r's Decision, ECF No. 18.

### A.    Procedural Posture

Balaguer filed for SSI and SSDI benefits on August 26, 2008, claiming that she has been disabled since June 15, 2007.  Admin. R. 189-94, 195-201, ECF No. 12.  The Regional Commissioner denied both of Balaguer's applications on December 24, 2008.  Id. at 104-09.  After Balaguer filed a request for reconsideration, her applications were reevaluated and again denied by the Regional Commissioner on June 4, 2009.  Id. at 110-12.  Balaguer requested an oral hearing on June 25, 2009, id. at 113-15, which was held before a hearing officer on October 13, 2010, see id. at 41.  On November 1, 2010, the hearing officer issued an unfavorable decision, finding that Balaguer was not disabled within the meaning of the Social Security Act for the alleged disability period.  Id. at 7-18.

The Decision Review Board (the "Board") selected the hearing officer's decision for review, but the Board did not complete its review within the prescribed ninety-day period.  Id. at 1.  Thus,

the hearing officer's decision became final on February 8, 2011. Id.; see 20 C.F.R. § 405.420(a)(2) (removed and reserved, 76 Fed. Reg. 24810 (May 3, 2011)).  On April 11, 2011, Balaguer filed the present action with this Court to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).  See Compl. 1-7.

**B.  Background**

**1.  Factual Background**

Balaguer was born in 1987.  Admin. R. 191.  She has a ninth grade education and did not obtain a General Education Development certificate.[1]  Id. at 54-55, 78.  She completed an eight-month training program at the Everest Institute to become a medical assistant.[2]  Id. at 50-52.

Balaguer's prior employment includes work as a part-time cashier at a retail store, a position she held April 2007 and July 2007.  Id. at 90, 256.  She has also held part-time positions in construction and landscaping between November 2005 and June 2007.  Id. at 92, 256.  Balaguer has a history of numerous physical and mental impairments.

---

[1] Balaguer also enrolled in special education classes during high school.  Id. at 56-57, 330.

[2] Admission to the program required several attempts and completing the program required aid from other students.  Id. at 51-53, 81; Pl.'s Mem. 3.

3

## 2.    Physical Impairments

On October 22, 2008, Balaguer saw Henry Astarjian, M.D.
("Dr. Astarjian"), who conducted a Physical Residual Functional
Capacity Assessment.  Id. at 421.  Dr. Astarjian noted that
Balaguer suffered from asthma, morbid obesity, hypothyroidism,
and back pain.  Id. at 421-22.  He stated that Balaguer's obesity
was the most probable reason for her back pain, and that
"otherwise there is no neuro/ortho pathology causing the pain."
Id. at 422.  Dr. Astarjian further noted that Balaguer
occasionally could lift or carry up to twenty pounds and could
frequently lift or carry up to ten pounds; that she could sit,
stand or walk for about six hours in an eight-hour work day.  Id.
Dr. Astarjian indicated that Balaguer could frequently climb
ramps or stairs and could occasionally climb ladders or ropes.
Id. at 423.  He also indicated that Balaguer could frequently
balance, stoop, kneel, crouch, and crawl, id., but warned that
she should avoid even moderate exposure to fumes, odors, dusts,
gases, and poor ventilation, id. at 425.

On July 6, 2010, Balaguer saw David Cahan, M.D. ("Dr.
Cahan"), for a consultative examination for the purposes of
determining disability.  Id. at 489.  Dr. Cahan noted that
Balaguer's asthma appeared to be under reasonable control and
that she was taking thyroid supplementation medication.  Id.  He
further noted that Balaguer complained of low back discomfort,

4

which occasionally radiated to the level of the posterior right knee, as well as right knee discomfort.  Id.  Dr. Cahan's examination revealed that "the right knee was tender with obvious crepitus and extension limited to 140 degrees."  Id. at 489.  He noted that Balaguer claimed that she could walk slowly for a half hour, but needed to rest after climbing one flight of stairs. Id. at 488.  Dr. Cahan further noted that Balaguer can sit for ten to twenty minutes and stand for five to ten minutes, with back and right knee pain limiting her.  Id.  He also indicated that Balaguer "could not squat or arise terribly well from a squatting position."  Id. at 489.

On September 25, 2010, Nurse Practitioner Rebecca Reed ("N.P. Reed"), Balaguer's primary treating practitioner since 2002, listed Balaguer's diagnoses as morbid obesity, hypothyroidism, migraine headaches, low back pain, and depression.  Id. at 678.  N.P. Reed noted that prescribed medications, such as analgesics and muscle relaxants, had helped Balaguer's back pain a little, but that physical therapy had not been helpful.  Id. at 679.  Balaguer has been prescribed several medications to treat her pain, including Levothyroxine sodium tabs, Synthroid, Albuterol, Adipex, Vitamin D supplements, Protonix, Flexeril, Tylenol, and Ipratropium Bromide.  Id. at 393, 401, 503, 511-12.  N.P. Reed indicated that Balaguer could sit and stand for 45 continuous minutes, id. at 680, and that

Balaguer can sit, stand, or walk for about two hours in an eight-hour work day, id.  She also indicated that Balaguer could not bend or twist at the waist.  Id. at 682.

### 3.  Mental Impairments

In April and July 2008, Balaguer sought mental health treatment with Licensed Independent Clinical Social Worker Carol L. Bell ("LICSW Bell"), stating that she was unhappy with her life.  Id. at 438.  LICSW Bell noted that Balaguer felt fearful and stressed in crowds, and was using alcohol and marijuana in order to lessen her symptoms of depression and anxiety.[3]  Id. at 438, 443.  Furthermore, she described Balaguer's affect, thought process, and attention as within normal limits, but noted that Balaguer's mood was sad and some intellectual deficits.  Id. at 444-45.  She ultimately diagnosed Balaguer with cannabis dependence, alcohol abuse, panic disorder with agoraphobia, and ruled out any learning disorders.  Id. at 438.

On May 2, 2009, Balaguer saw Michael J. Bohnert, M.D. ("Dr. Bohnert") for a psychiatric consultative exam on a referral from the Disability Determination Services.  Id. at 470.  Dr. Bohnert noted that Balaguer experienced depression and anxiety, and felt scared when around many other people.  Id. at 471.  He also indicated that her affect was bland and restricted in range.  Id.

---

[3] At the hearing, Balaguer testified that she has not used marijuana and alcohol since sometime in 2008.  Id. at 71-72; see also id. at 471.

6

at 472.  He noted that Balaguer reported that she suffered from

diminished concentration.  Id.  Dr. Bohnert also noted, however,

that her stream of mental activity was normal, that her thought

process was "coherent and goal directed," and that she adequately

performed certain mental tasks which were asked of her, such as

correctly subtracting three serially from twenty.  Id.  Balaguer

scored a possible twenty-nine out of thirty points in a Mini-

Mental Status exam administered by Dr. Bohnert, which indicates a

score of "normal."  Id.  Dr. Bohnert further noted that some of

Balaguer's daily living activities included: watching television,

cooking, doing laundry, cleaning, grocery shopping, writing,

listening to music, spending time with two best friends, and her

older brother and sister.  Id.  Dr. Bohnert stated that Balaguer

"probably" suffers from "Mild Adjustment Disorder with Depression

and Anxiety."  Id. at 473.

Olrich B. Jacobson, M.D. ("Dr. Jacobson"), a psychiatrist,

testified at the administrative hearing on October 13, 2010, as a

non-examining medical expert.  Id. at 83-87.  Dr. Jacobson

testified that Dr. Bohnert had diagnosed Balaguer with "a mild

adjustment disorder with depression and anxiety" and that this

diagnosis was supported by the medical record.  Id. at 84.  He

also testified that Balaguer did not meet or equal any mental

health listing in the paragraph A criteria of the Social Security

Administration's list of impairments.  Id. at 84-85.  Regarding

the paragraph B criteria of a mental health listing, Dr. Jacobson testified that Balaguer had a moderate impairment in activities of daily living, a marked impairment in social functioning, a marked impairment in concentration, persistence, and pace, and that there were no episodes of decompensation with respect to these impairments.  Id. at 85-86.  In addition, he stated that his assessment was "based primarily on [Balaguer's] testimony," and that there was no other basis in the medical records to indicate the levels of impairments he attributed to Balaguer.[4] Id.

## II.   LEGAL STANDARD

### A.   Standard of Review

Under 42 U.S.C. § 405(g), a district court has the power to affirm, modify, remand or reverse a decision of the Commissioner. The district court must make its decision based on the pleadings and transcript of the record before the Commissioner; "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g); accord Manso-Pizarro v. Secretary of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996).  The Commissioner's

---

[4] The record and the hearing officer's decision also contain visits by Balaguer to doctors and other medical professionals not specifically mentioned herein.  See id. at 9-10.  These records contain medical history and evaluations consistent with those taken and completed by the medical professionals discussed previously.

findings must be upheld "if a reasonable mind, reviewing the
evidence in the record as a whole, could accept it as adequate to
support his conclusion." Irlanda Ortiz v. Secretary of Health &
Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting
Rodriguez v. Secretary of Health & Human Servs., 647 F.2d 218,
222 (1st Cir. 1981)). As it is the role of the Commissioner to
draw factual inferences, make credibility determinations, and
resolve conflicts in the evidence, the Court must not perform
such tasks in reviewing the record. Id. Complainants face a
difficult battle in challenging the Commissioner's determination
because, under the substantial evidence standard, a court must
uphold the Commissioner's determination, "even if the record
arguably could justify a different conclusion, so long as it is
supported by substantial evidence." Rodriguez Pagan v. Secretary
of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (citation
omitted). Furthermore, questions of law are reviewed de novo.
Ward v. Commissioner of Soc. Sec., 211 F.3d 652, 655 (1st Cir.
2000).

## B.    Social Security Disability Standard

An individual is considered disabled if he is "[unable] to
engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment which can be
expected to result in death or which has lasted or can be
expected to last for a continuous period of not less than 12

months."  42 U.S.C. § 423(d)(1)(A).

The Social Security Administration has promulgated a five-step sequential analysis to determine whether a claimant is disabled.  <u>See</u> 20 C.F.R. § 404.1520.  The hearing officer must determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the severity of the impairment meets or equals an impairment listed under 20 C.F.R. Part 404, Subpart P, Appendix 1, and meets the duration requirement; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) whether the impairment prevents the claimant from doing any other work considering the claimant's age, education, and work experience.  <u>Id.</u>

The claimant bears the burden in the first four steps to show that he is disabled within the meaning of the Social Security Act.  <u>Goodermote</u> v. <u>Secretary of Health & Human Servs.</u>, 690 F.2d 5, 7 (1st Cir. 1982).  Once the claimant has established that he is unable to return to his former employment, the burden shifts to the Commissioner to prove the fifth step, that the claimant is able to engage in substantial gainful activity that exists in significant numbers in the national economy.  <u>Id.</u>

## III.    THE HEARING OFFICER'S DECISION

At the first step, the hearing officer determined that Balaguer had not engaged in any substantial gainful activity

since the alleged onset date of August 8, 2008.  Admin. R. 9.  At

the second step, the hearing officer determined that Balaguer's

obesity and adjustment disorder with depression and anxiety

constituted "severe impairments" during the relevant time

period.[5]  Id.  At the third step, the hearing officer determined

that none of these impairments, however, met or medically equaled

any of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1.  Id. at 11.

At the fourth step, the hearing officer determined that

Balaguer "[had] the residual functional capacity to perform

sedentary work as defined in 20 C.F.R. § 416.967(a)," but noted

that Balaguer must avoid moderate exposure to fumes, odors,

dusts, and gases, and requires sit/stand changes every forty-five

minutes.  Id.  The hearing officer further concluded that

Balaguer is limited to low stress work with only occasional

changes in work settings, i.e., unskilled work with simple tasks

that only require occasional decision-making.  Id. at 11-12.

Balaguer could have no interaction with the public except by

telephone and only superficial interaction with coworkers.  Id.

at 11-12.  Based on this residual functional capacity, at the

fifth step, the hearing officer determined that Balaguer could

---

[5]   The hearing officer determined that Balaguer's
hypothyroidism and asthma were "well-controlled with treatment"
and therefore did not constitute severe impairments.  Admin. R.
9-10.  Balaguer does not contest this finding.

perform work that exists in significant numbers in the national economy, such as an order clerk.  Id. at 17.  The hearing officer therefore concluded that Balaguer had not been disabled from August 8, 2008, to the date of the hearing officer's decision. Id.

IV.   ANALYSIS

Balaguer challenges the hearing officer's disability finding on three grounds.  Pl.'s Mem. 6-17.  First, Balaguer alleges that the hearing officer erred in finding, at the second step of the sequential disability analysis, that her back and knee pain were not medically determinable impairments.  Id. at 6.  Second, Balaguer claims that the hearing officer erroneously disregarded the favorable testimony of Dr. Jacobson with respect to her mental impairments.  Id. at 8.  Third, Balaguer argues that the hearing officer's determination of her residual functional capacity at the fourth step of the sequential disability analysis was not supported by substantial evidence.  Id. at 11-17. Specifically, she argues that the hearing officer improperly assessed the opinion of N.P. Reed, as well as her own credibility.  Id.

A.   Medically Determinable Impairments

At the second step of the sequential evaluation analysis, the hearing officer is required to determine whether the claimant's impairment or combination of impairments is severe,

12

meaning that the impairments significantly limit the claimant's physical or mental ability to do basic work activities.  See 20 C.F.R. §§ 404.1520(c), 416.920(c); see also, 20 C.F.R. §§ 404.1521, 416.921 (defining non-severe impairments).  The claimant has the burden of proving that a medically determinable impairment is severe.  Ramos v. Barnhart, 60 F. App'x 334, 335 (1st Cir. 2003) (quoting Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)).  An impairment is not severe only where "medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered."  Barrientos v. Secretary of Health and Human Servs., 820 F.2d 1, 2 (1st Cir. 1987) (per curiam) (citations and internal quotation marks omitted).  The step two severity requirement is intended "to do no more than screen out groundless claims."  McDonald v. Secretary of Health and Human Servs., 795 F.2d 1118, 1124 (1st Cir. 1986).

The hearing officer found that Balaguer's obesity and adjustment disorder with depression and anxiety were her only severe impairments.  Admin. R. 9.  Moreover, the hearing officer concluded that Balaguer had no medically determinable back or knee disorder, despite a history of complaints of pain, because the record contained no specific diagnosis, nor was there any

13

medical evidence supporting the existence of an impairment.  Id. at 10.

Balaguer argues that the hearing officer erred in making this determination because Balaguer's complaints of back and knee pain were supported by a specific diagnosis and medical evidence in the record.  Pl.'s Mem. 6.  Specifically, Balaguer points to N.P. Reed's diagnosis of likely chondromalacia patella, the softening and breakdown of the cartilage that lines the underside of the kneecap.  Id.  Furthermore, Balaguer mentions Dr. Cahan's examination which revealed tenderness in the right knee with obvious crepitus.  Id.

Balaguer also argues that the hearing officer failed to take into account her obesity and the effect this condition may have on her back and knee pain.  Id. at 7-8.  In a Policy Interpretation Ruling, the Social Security Administration has stated that "[o]besity is a risk factor that increases an individual's chances of developing impairments in most body systems.  It commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems."  SSR 02-1p, 2000 WL 628049, at *3 (Sept. 12, 2002).  The ruling adds that "[t]he fact that obesity is a risk factor for other impairments does not mean that individuals with obesity necessarily have any of these impairments [e.g., osteoarthritis].  It means that they are at greater than average

risk for developing the other impairments." Id. Consequently, the mere fact that a claimant is obese does not establish the presence of other severe impairments. Rather, the burden is on the claimant to establish that her impairments are severe. Ramos, 60 F. App'x at 335.

The hearing officer acknowledged Balaguer's symptoms of back and knee pain, but also stated that Balaguer had "not been diagnosed with a specific back or knee disorder by an acceptable medical source." Admin. R. 10. The hearing officer properly attributed limited weight to N.P. Reed's diagnosis of likely chondromalacia patella. The Social Security Regulations do not require that equal weight be given to all medical opinions. See 20 C.F.R. §§ 404.1527(c), 416.927(c). The medical opinions of treating sources are given more weight than non-treating sources. Id. §§ 404.1527(c)(2), 416.927(c)(2). A treating source is a "physician, psychologist, or other acceptable medical source" who treated the claimant. Id. §§ 404.1502, 416.902; see also, S.S.R. 06-03p, 2006 WL 2329939 (Aug. 9, 2006) ("[O]nly 'acceptable medical sources' can be considered treating sources, as defined in 20 C.F.R. 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight."). The Social Security Regulations exclude nurse practitioners from the list of acceptable medical sources and they "cannot establish the existence of a medically determinable impairment." SSR 06-03p,

2006 WL 2329939, at *2; 20 C.F.R. § 404.1527(a)(2).  Morever, N.P. Reed's diagnosis was not supported by any acceptable medical source or laboratory findings.  20 C.F.R. § 404.1527(c)(3) ("The more a medical source [regardless of its source] presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [it will be given].").

Balaguer's medical records demonstrate an occasional decrease in range of motion of the lumbar spine and right knee, signs of paraspinal and right knee tenderness, and right knee crepitus.  Admin. R. 489, 582, 662, 673, 675.  Other treatment notes, however, did not describe any significant abnormalities in Balaguer's gait, motor strength, or sensation.  See, e.g., id. at 440, 508, 582.  There are no descriptions of any significant muscle spasms, muscle atrophy, or a positive straight leg test.  Id. at 508, 582, 673, 675.  Furthermore, the record contains no imaging studies or laboratory test of Balaguer's back or knee that would reveal any abnormality.  Id. at 10; see 20 C.F.R. § 404.1527(a)(1) (providing that findings of impairment must be "demonstrable by medically acceptable clinical and laboratory diagnostic techniques").

Accordingly, this Court rules that the hearing officer's determination with respect to severe impairments is supported by substantial evidence.

**B.    Evaluation of Dr. Jacobson's Opinion Testimony**

Balaguer contends that the hearing officer erroneously disregarded Dr. Jacobson's medical opinion.  Pl.'s Mem. 8-11. Dr. Jacobson testified as a non-examining medical expert that Balaguer's mental impairments caused functional limitations known as the "paragraph B criteria."  Admin. R. 85-86.  The paragraph B criteria is implicated in the second and third step of the sequential disability analysis in determining if a mental impairment is severe and if a mental impairment meets the requirements of a listed impairment.  20 C.F.R. § 416.920a; 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.09(A); see also, Arruda v. Barnhart, 314 F. Supp. 2d 52, 62 n.8 (D. Mass. 2004) (Bowler, J.).  According to Dr. Jacobson, Balaguer's functional limitations included moderate restrictions in activities of daily living, marked difficulties in social functioning, and marked difficulties in concentration, persistence, or pace.  Admin. R. 85-86.

The hearing officer found Dr. Jacobson's testimony unpersuasive, noting that his medical opinion was based solely on Balaguer's subjective complaints and was not supported by the medical evidence in the record.  Id. at 11.  The hearing officer found Belaguer's testimony about her symptoms and limitations not credible to the extent alleged.  Id.  Furthermore, the hearing officer stated that the marked limitations described by Dr.

17

Jacobson are inconsistent with other significant evidence of record. Id. As a result, the hearing officer determined that Dr. Jacobson's opinion did not support the finding that Balaguer meets or equals the severity requirements of any listing level impairments. Id. Balaguer challenges the hearing officer's determination, arguing that Dr. Jacobson's testimony is supported by her testimony and the medical record. Pl.'s Mem. 9-11.

The hearing officer must consider all relevant evidence in rating the severity of a claimant's functional limitations. See 20 C.F.R. § 404.1520a(c)(1). The opinion of a non-examining physician will generally receive less weight than the opinion of an examining physician. See 20 C.F.R. § 404.1527(c)(1); McCollum v. Astrue, Civil Action No. 11-30079-KPN, 2012 WL 2244798, at *5 (D. Mass. June 14, 2012) (Neiman, M.J.). Furthermore, the hearing officer may accord significantly less weight to a non-examining physician's opinion if it is contradicted by the evidence in the record. See Mastro v. Apfel, 270 F.3d 171, 177-78 (4th Cir. 2001) (noting that if a physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight). Much of the other substantial evidence in the record contradicts the findings of Dr. Jacobson. The hearing officer found that the mental status examinations Balaguer had undergone consistently revealed that she was alert, oriented with normal

18

and appropriate mood and affect, and normal interaction.  See,
e.g., Admin. R. 417, 435-436, 508, 551.  She demonstrated normal
patterns of mental activity and coherent, logical and goal
directed thought processes during Dr. Bohnert's examination.  Id.
at 472.  The mental examination performed in May 2009, indicated
no significant mental impairments.  Id.; see id. at 471
(reporting that Belaguer states that her concentration is
diminished, "unless [she is] into it.").

In light of this evidence, the hearing officer's decision to
accord little weight to the medical opinion of Dr. Jacobson is
supported by substantial evidence.

### C.   Residual Functional Capacity Determination

The final issue is whether the hearing officer erred in
effectuating the residual functional capacity determination at
the fourth step of the sequential disability analysis.  The
hearing officer determined that Balaguer had the residual
functional capacity to perform sedentary work as defined in 20
C.F.R. § 416.967(a), noting that she requires a sit/stand option
with changes every forty-five minutes.  Id. at 11.  Balaguer
challenges the hearing officer's residual functional capacity
determination on two grounds.  First, she argues that the hearing
officer's credibility determination of her subjective complaints
of pain is not supported by substantial evidence.  Pl.'s Mem. 11-
15.  Second, Balaguer claims that the hearing officer erroneously

disregarded the medical opinion of N.P. Reed.  <u>Id.</u> at 15-16.

### 1.   Credibility Determination

Balaguer claims that the hearing officer insufficiently analyzed her complaints of pain and mischaracterized the evidence regarding her daily living activities and work history in making the credibility determination.  <u>Id.</u> at 11-14.

"It is the responsibility of the [hearing officer] to determine issues of credibility and to draw inferences from the record evidence."  <u>Irlanda Ortiz</u>, 955 F.2d at 769 (citation omitted).  When a claimant's testimony is disregarded, the hearing officer "must make specific findings as to the relevant evidence he considered in determining to disbelieve the [claimant]."  <u>Da Rosa</u> v. <u>Secretary of Health & Human Servs.</u>, 803 F.2d 24, 26 (1st Cir. 1986) (citation omitted).  This Court has determined that it is insufficient for the hearing officer to make general findings that a claimant's testimony is not credible.  <u>Vega</u> v. <u>Astrue</u>, Civil Action No. 11-10406-WGY, 2012 U.S. Dist. LEXIS 44416, at *18 (D. Mass. Mar. 30, 2012); <u>Bazile</u> v. <u>Apfel</u>, 113 F. Supp. 2d 181, 186-87 (D. Mass. 2000).  Rather, the hearing officer "must identify what testimony is not credible and what evidence undermines the claimant's complaints."  <u>Bazile</u>, 113 F. Supp. 2d at 187 (citing <u>Lester</u> v. <u>Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995)).

When assessing Balaguer's subjective complaints of pain, the

hearing officer must consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions); (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication; (4) Treatment, other than medication, for relief of pain; (5) Functional restrictions; and (6) The claimant's daily activities.

Avery v. Secretary of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). Balaguer argues that the hearing officer should have enumerated and analyzed the Avery factors. Pl.'s Mem. 14. The hearing officer, however, need not expressly discuss every enumerated factor. See Frustaglia v. Secretary of Health & Human Servs., 829 F.2d 192, 194-195 (1st Cir. 1987); see also, Gordils v. Secretary of Health & Human Servs., 921 F.2d 327, 330 (1st Cir. 1990); Pelletier v. Astrue, slip op., Civil Action No. 09-10098-GAO, 2012 WL 892892, at *5 (D. Mass. Mar. 15, 2012) (O'Toole, J.); Vega, 2012 U.S. Dist. LEXIS 44416, at *18. But see Pires v. Astrue, 553 F. Supp. 2d 15, 24 (D. Mass. 2008) (Ponsor, J.) ("The consistency of the evidence in support of [claimant's] subjective claims of pain cast[ed] doubt on any assumption that the [hearing officer] did implicitly consider the Avery factors.").

The hearing officer based Belaguer's credibility determination on the entire record. It cannot be said that the hearing officer's determination with respect to Balaguer's testimony lacks sufficient evidentiary support. The hearing

officer noted that the medical records and Balaguer's reported activities were inconsistent with her alleged symptoms.  Admin. R. 12.  She further noted that the medical record shows that despite Balaguer's obesity, and some findings of tenderness, knee cracking, and decreased range of motion of the spine and knee, the right knee was otherwise stable and no test shows any significant edema, muscle spasm or muscle atrophy, and no physician found any disfunction of the spine.  Id. at 13. Furthermore, the medical evidence revealed that Balaguer has no significant abnormalities in gait, motor strength or sensation. Id.; see also, id. at 440, 508, 582.

In addition, the hearing officer noted that Belaguer's credibility determination was based in part on Balaguer's history of non-compliance with her medical treatments.  Id. at 12.  "A claimant's failure to follow prescribed medical treatment contradicts subjective complaints of disabling conditions and supports [a hearing officer's] decision to deny benefits."  Russell v. Barnhart, 111 F. App'x 26, 27 (1st Cir. 2004) (citations omitted); see Perez Torres v. Secretary of Health & Human Servs., 890 F.2d 1251, 1255 (1st Cir. 1989) (holding that a hearing officer may discredit the severity of pain complaints when claimant did not seek regular treatment for conditions that were amenable to treatment).

Additionally, the hearing officer found Balaguer not

credible as to her reported limitations in her daily activities.
Admin. R. 12.  Balaguer contends that the hearing officer
mischaracterized the evidence.  Pl.'s Mem. 12.  She claims that
the hearing officer omitted that she needed substantial help to
complete her medical assistance course, that she was able to
engage in self care on a "good day" in very limited
circumstances, and the jobs she held were part-time only, which
did not last for many months.  Id.  Balaguer's allegation is
unpersuasive and the hearing officer sufficiently supported his
findings in the records.  Admin. R. 12-13.  Although Balaguer
testified she received some "help" to pass her medical
assistance course, this help does not relate to her symptoms of
obesity, back and knee pain.  The hearing officer was correct in
finding that her symptoms did not limit her ability to "engage"
in this activity.  There is ample support for the hearing
officer's finding as to Balaguer's daily activities, and not
merely on "good days."  See, e.g., id. at 472 (reporting that
she "generally" takes her four dogs out, cooks, cleans, goes
grocery shopping, writes, reads, and plays games); id. at 238-42
(same); id. at 264-71 (same).  The hearing officer did not
misconstrue Balaguer's work history to determine her
credibility.  The hearing officer acknowledged that her earnings
did not rise to the level of substantial gainful activity, yet
he also noted that Balaguer did have a greater work related

activity than what she alleged in her testimony and that she told Dr. Bohnert she could work if someone gave her a chance. Id. at 12; see also id. at 470-71.

The hearing officer's decision was thus based on the inconsistencies between Balaguer's reports of the intensity of symptoms and the objective medical evidence.  As a result, the hearing officer's credibility determination was based on substantial evidence and is therefore entitled to deference by this Court.

### 2.  Evaluation of the Medical Opinion of N.P. Reed

Balaguer claims that the hearing officer erred when she disregarded the medical opinion of N.P. Reed in making her residual functional capacity determination.  Pl.'s Mem. 15-16. Balaguer recognizes that a nurse practitioner is not an "acceptable medical source" but rather an "other source."  Id. at 15 (citing SSR 06-03p).  The Social Security Administration has promulgated a set of factors that the hearing officer must consider when evaluating a medical opinion: (1) whether the source has examined the claimant; (2) whether the source is the claimant's treating source, and if so, the length and nature of such treatment; (3) whether the source presents evidence supporting the opinion; (4) how consistent the opinion is with other evidence in the record; (5) whether the source is a specialist in a certain field; and (6) other factors which tend

to support or contradict the opinion.   20 C.F.R. § 416.927(c).

Although these factors explicitly apply to evaluating opinions

from "acceptable medical sources," these same factors can also

be applied to evaluating opinions from "other sources."   SSR 06-

03p, 2006 WL 2329939, at *4.

Balaguer asserts that the hearing officer should give N.P.

Reed's opinion "maximum weight," primarily because N.P. Reed has

acted as Balaguer's primary care provider since 2002.   Pl.'s

Mem. 15.   Balaguer also asserts that N.P. Reed's opinion,

contrary to the hearing officer's determination, was consistent

with and supported by medical evidence in the record.   Id.

The hearing officer stated that the treatment notes from

N.P. Reed did not "describe abnormalities that would support the

assessed limitations."   Admin. R. 14.   Furthermore, the hearing

officer noted the lack of imaging studies or other medical

records and treatment notes that showed the limitations

described by N.P. Reed's Residual Functional Capacity

Assessment.   Id.   The hearing officer concluded that the medical

evidence in the record was more consistent with the conclusions

of Dr. Astarjian and Dr. Scolnick.   Id.   Although N.P. Reed may

have treated Balaguer for the longest period of time, the length

of treatment and the fact that a source examined the claimant

are but a few of the factors that the hearing officer must

consider.   20 C.F.R. §§ 416.927(c)(1)-(2).   The hearing officer

must also consider whether the source presents evidence supporting the opinion and how consistent the opinion is with other evidence in the record.  20 C.F.R. §§ 416.927(c)(3)-(4); see Mastro, 270 F.3d at 177-78.  The hearing officer considered the factors and ultimately found N.P. Reed's opinion regarding Balaguer's limitations unpersuasive.  Admin. R. 14.  Here too, the hearing officer's determination is based on substantial evidence and is thus entitled to deference.

**V.   CONCLUSION**

For all the reasons stated above, this Court DENIES Balaguer's motion for an order reversing or remanding the decision of the Commissioner, ECF No. 14, and GRANTS the Commissioner's motion to affirm the Commissioner's decision, ECF No. 18.  Judgment shall enter for the Commissioner.

**SO ORDERED.**

<u>/s/ William G. Young</u>
WILLIAM G. YOUNG
DISTRICT JUDGE